UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SAUCONY, INC.,

    Plaintiff,

v.

SACEDI SPORTS INTERNATIONAL SARL,

    Defendant.

Civil Action No. _____

05-12537 NMG
Referred to MJ Leo T Sorokin

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Saucony, Inc. ("Saucony"), by its undersigned attorneys, for its complaint against defendant Sacedi Sports International SARL ("Sacedi"), hereby alleges as follows:

### NATURE OF THE ACTION

1. Saucony seeks (1) damages in the amount of at least $160,848.00 for Sacedi's breach of a Distribution Agreement between the parties and (2) a declaration that the Distribution Agreement and a related Services Agreement lawfully have been terminated and are no longer in effect.

### THE PARTIES

2. Saucony is a corporation organized under the laws of Massachusetts with a principal place of business in Peabody, Massachusetts. Saucony manufactures and sells, among other things, athletic footwear.

3. Upon information and belief, Sacedi is a limited liability company organized under the laws of France with a principal place of business in Ramonville, France.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332. There is diversity jurisdiction because Saucony is a Massachusetts corporation and Sacedi is a French corporation, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5.  Sacedi has consented to personal jurisdiction in Massachusetts pursuant to a forum selection clause in the contract giving rise to the present dispute.

6.  This Court also has personal jurisdiction over Sacedi pursuant to M.G.L. c. 233A, § 3, because Sacedi has transacted business in the Commonwealth of Massachusetts, and the acts complained of herein arise out of that business transaction.

7.  The District of Massachusetts is the proper venue to hear this action because Sacedi is subject to personal jurisdiction in Massachusetts, and there is no other district where this action may otherwise be brought.

## FACTUAL BACKGROUND

### *The Distribution Agreement*

8.  Saucony and Sacedi executed a Distribution Agreement (the "Distribution Agreement") on or about July 12, 2002. (A true and accurate copy of the Distribution Agreement is attached hereto as Exhibit A.)

9.  Pursuant to the Distribution Agreement, Sacedi was to be the exclusive distributor of Saucony athletic footwear in France and its territories (hereinafter "France") for a period of approximately five years beginning January 1, 2003 and expiring on August 31, 2007.

10. In exchange for its appointment as exclusive distributor of Saucony athletic footwear in France, Sacedi agreed to fulfill certain minimum purchase requirements for Saucony athletic footwear, as follows:

- 4,000 pairs for the time period January 1, 2003 to August 31, 2003 ("first contractual year");
- 8,000 pairs for the time period September 1, 2003 to August 31, 2004 ("second contractual year");
- 16,000 pairs for the time period September 1, 2004 to August 31, 2005 ("third contractual year");
- 32,000 pairs for the time period September 1, 2005 to August 31, 2006 ("fourth contractual year"); and
- 48,000 pairs for the time period September 1, 2006 to August 31, 2007 ("fifth contractual year").

11. Sacedi also agreed that, in the event it failed to meet the minimum purchase requirement for any single contractual year, it would pay Saucony $2.00 per pair on the difference between the minimum purchase requirement in any particular year and the number of pairs that Sacedi actually purchased.

12. Sacedi agreed to pay the amount due for failing to meet its annual minimum purchase requirement prior to the end of the applicable contractual year.

13. Pursuant to the Distribution Agreement, Sacedi was also required to submit a marketing plan to Saucony for approval and consideration at least ninety days prior to the beginning of each calendar year.

14. The Distribution Agreement provided that Saucony would be entitled to terminate the agreement and to receive liquidated damages in the event of a fundamental breach by stating: "If Saucony terminates this Agreement due to a fundamental breach by [Sacedi], then [Sacedi] shall remain obligated to pay Saucony all amounts owing under this Agreement including,

without limitation, the compensation amount set forth above with respect to [Sacedi's] failure to satisfy the minimum purchase requirements for the original (or renewal) term of this Agreement."

15.     As indicated by the dramatically increasing minimum purchase requirements contained in the Distribution Agreement, the essence of the Distribution Agreement was that Sacedi, as exclusive distributor of Saucony athletic footwear in France, would grow the Saucony brand in France during the contract period.

16.     A "Services Agreement" between Saucony and Sacedi was executed in tandem with the Distribution Agreement. (A true and accurate copy of the Services Agreement is attached hereto as Exhibit B.)

17.     The Services Agreement provided that it would automatically terminate upon termination of the Distribution Agreement.

### *Sacedi's Failure to Meet the Minimum Purchase Requirements and Otherwise Abide by its Contractual Obligations*

18.     As outlined above, the Distribution Agreement required that in each subsequent contractual year, Sacedi would increase its purchases of Saucony athletic footwear.

19.     The minimum purchase requirements doubled for each of the first four contractual years of the Distribution Agreement, and increased by one and one-half fold in the final contractual year.

20.     Therefore, the Distribution Agreement presupposed that Sacedi would grow the Saucony brand in France in exchange for Sacedi's exclusivity as distributor of Saucony products.

21.     As set forth below, Sacedi's conduct during the contract period has amounted to a fundamental breach of the essence of the Distribution Agreement.

22.  In the first contractual year, Sacedi ordered and paid for 3,360 pairs of Saucony shoes. Sacedi failed to meet the minimum purchase requirement under the Distribution Agreement, which was 4,000 pairs.

23.  Therefore, Sacedi was required to pay Saucony $1,280.00, reflecting $2.00 per pair for the minimum purchase requirement shortfall. Sacedi made this payment to Saucony.

24.  Sacedi barely exceeded the minimum purchase requirement in the second contractual year (Sacedi purchased 8,544 pairs of shoes and 8,000 pairs were required).

25.  In the third contractual year, Sacedi once again failed to meet the minimum purchase requirement. Sacedi purchased 10,860 pairs of athletic footwear. The Distribution Agreement required it to purchase at least 16,000 pairs for that period (ending August 31, 2005).

26.  Sacedi was short of the minimum purchase requirement by 5,140 pairs and, therefore, was contractually obligated to pay Saucony $10,280.00 by August 31, 2005. Sacedi has failed to make this payment to Saucony.

27.  Sacedi's purchases for the contractual period ending August 31, 2005, were 30% below the minimum purchases required under the Distribution Agreement.

28.  In the first part of the fourth contractual year (the Spring 2006 product season), Sacedi ordered only 4,716 pairs of Saucony shoes (Sacedi is required to purchase 32,000 pairs in the fourth contractual year).

29.  As a result, to meet the minimum purchase requirement for the fourth contractual year, Sacedi would need to purchase more than 27,000 pairs of Saucony shoes in the second part of the fourth contractual year (the Fall 2006 product season).

30. Since it executed the Distribution Agreement, the most Sacedi has purchased in any product season has been 5,976 pairs (in the Spring 2005 product season). Sacedi's purchases since that product season have decreased dramatically.

31. Sacedi has informed Saucony that it will be unable to make its minimum purchases for the fourth contractual year.

32. In particular, Sacedi recently approached Saucony and informed it that Sacedi cannot fulfill its obligations under the remaining contractual years under the Distribution Agreement unless the minimum purchase requirements are reduced to approximately 15,000 pairs in the fourth contractual year and 20,000 pairs in the fifth contractual year.

33. In addition to not making the minimum purchases required under the Distribution Agreement, Sacedi has not abided by its other material contractual obligations.

34. For example, Sacedi has not submitted a marketing plan to Saucony for its approval and consideration for the fourth contractual year, despite Sacedi's contractual requirement to do so ninety days prior to the end of the calendar year.

35. In sum, as evidenced by its failure to meet the required minimum purchases for two of the three contractual years, its failure timely to submit a marketing plan, and its proposal to reduce the minimum purchase requirements under the Distribution Agreement, Sacedi has not used its best efforts to expand the market for and to promote the sale of Saucony footwear in France.

36. As a result, Sacedi has fundamentally breached the Distribution Agreement, thereby giving Saucony the right to terminate the agreement and seek its liquidated damages.

*Events Leading up to the Termination of the Distribution Agreement*

37. On or about October 27, 2005, Ken Malach, Vice President and General Manager International of Saucony, met with Joseph de Massia, Isabelle Oger, and others from Sacedi to discuss the Distribution Agreement ("the meeting").

38. Among the topics discussed at the meeting were Sacedi's distributorship of the Saucony brand and its performance under the Distribution Agreement. Sacedi proposed renegotiating the terms of the Distribution Agreement and put forward two options. (A true and accurate copy of the agenda that Sacedi prepared for the meeting, showing the two options, is attached hereto as Exhibit C.)

39. Under Sacedi's first option, in exchange for a sizeable payment from Saucony to Sacedi, Saucony would be permitted to terminate the Distribution Agreement and establish its own distributorship in France under a format chosen by Saucony.

40. Under its proposed second option, Sacedi would remain the exclusive distributor of Saucony footwear in France, but the minimum purchase requirements would be significantly reduced.

41. On November 9, 2005, following a telephone conversation with Mr. de Massia, Mr. Malach received an e-mail from Mr. de Massia purporting to state that Sacedi would continue to operate under the original terms of the Distribution Agreement. (A true and accurate copy of Mr. de Massia's November 9, 2005 e-mail is attached hereto as Exhibit D.)

42. Mr. de Massia further acknowledged in the e-mail that Sacedi owed Saucony an amount due, as of August 31, 2005, for failing to meet the minimum purchase requirement of the third contractual year, although Sacedi has yet to make that payment.

43. By letter dated November 18, 2005, Saucony replied to Mr. de Massia's e-mail and terminated the Distribution Agreement based on Sacedi's fundamental breach of the agreement, including (i) its failure to meet the minimum purchase requirements in two of the first three contractual years; (ii) its admitted inability to meet the minimum purchase requirements in the fourth and fifth contractual years absent a reduction in those requirements; (iii) its failure to make the payment due in the third contractual year for Sacedi's shortfall in failing to meet its minimum purchases requirement for that year; and (iv) its failure to submit a marketing plan for the fourth contractual year. (A true and accurate copy of Saucony's November 18, 2005 letter is attached hereto as Exhibit E.)

44. In its November 18, 2005 letter, Saucony challenged Sacedi's claimed ability to meet the minimum requirements for the fourth contractual year based on its conversations and correspondence with Sacedi over the prior months, as well as the small volume of its purchases for the first half of the fourth contractual year.

45. Saucony also stated that it was prepared to accommodate Sacedi with respect to a winding down of the distribution relationship, even though the termination of the Distribution Agreement was effective immediately for all other purposes.

46. On November 28, 2005, Mr. de Massia sent another e-mail to Mr. Malach rejecting Saucony's termination of the Distribution Agreement. (A true and accurate copy of Mr. de Massia's November 28, 2005 e-mail is attached hereto as Exhibit F.)

47. Mr. de Massia argued that the Distribution Agreement was in full force and effect and threatened to take legal action to enforce Sacedi's rights under the Distribution Agreement.

**COUNT I (Breach of Contract)**

48. Saucony repeats and realleges the allegations contained in paragraphs 1-47 as if fully set forth herein.

49. As set forth in detail in the allegations above, Sacedi has fundamentally breached the Distribution Agreement.

50. Saucony has been damaged by Sacedi's fundamental breach of the Distribution Agreement and is entitled to damages in an amount no less than $160,848.00, representing $10,280.00 owed for failure to meet the minimum purchase requirement for the third contractual year, and $150,568.00 in liquidated damages. (A chart detailing Saucony's damages calculation is attached hereto as Exhibit G.)

**COUNT II (Breach of Contract for Failing to Use Best Efforts)**

51. Saucony repeats and realleges the allegations contained in paragraphs 1-50 as if fully set forth herein.

52. Pursuant to M.G.L. c. 106, § 2-306(2), Sacedi was required to use best efforts to expand the market for and to promote the sale of Saucony athletic footwear in France.

53. As set forth in detail in the allegations above, Sacedi has not used its best efforts to expand the market for and to promote the sale of Saucony athletic footwear in France.

54. Saucony has been damaged by Sacedi's breach of its obligations pursuant to M.G.L. c. 106, § 2-306(2), in an amount to be determined at trial.

**COUNT III (Breach of the Implied Covenant of Good Faith and Fair Dealing)**

55. Saucony repeats and realleges the allegations contained in paragraphs 1-54 as if fully set forth herein.

56. As set forth in detail in the allegations above, Sacedi has breached the covenant of good faith and fair dealing implied in the Distribution Agreement by failing to make payment owed and due under the Distribution Agreement, by failing to use best efforts to promote Saucony athletic footwear in France, and by failing to grow the Saucony brand in France.

57. Saucony has been damaged by Sacedi's breach of the Distribution Agreement in an amount to be determined at trial.

### COUNT IV (Declaratory Judgment)

58. Saucony repeats and realleges the allegations contained in paragraphs 1-57 as if fully set forth herein.

59. As set forth in detail in the allegations above, Saucony has terminated the Distribution Agreement due to Sacedi's fundamental breach of the Distribution Agreement.

60. By reason of Sacedi's denial that the Distribution Agreement has been lawfully terminated, insistence that the Distribution Agreement is still in full force and effect, and threat to take legal action to enforce its rights under the Distribution Agreement, an actual case or controversy exists between Saucony and Sacedi concerning the status of the Distribution Agreement and the respective parties' rights and obligations thereunder.

61. This Court has jurisdiction to declare the Distribution Agreement and the related Services Agreement terminated and/or the respective rights and obligations of Saucony and Sacedi under the Distribution Agreement pursuant to 28 U.S.C. § 2201, and to grant further necessary and proper relief pursuant to 28 U.S.C. § 2202.

### PRAYERS FOR RELIEF

WHEREFORE, Saucony prays for relief as follows:

1. Judgment in its favor and against Sacedi on Counts I through IV of the complaint;

2. A judicial declaration that Saucony lawfully terminated the Distribution Agreement on November 18, 2005, and that the Distribution Agreement and the related Services Agreement are no longer in effect;

3. An award of damages of at least $160,848.00 (representing $10,280.00 owed for failure to meet the minimum purchase requirement for the contractual year ending August 31, 2005, and $150,568.00 in liquidated damages), plus interest;

4. Costs and attorneys' fees;

5. Such additional further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Saucony demands a trial by jury on all issues triable by a jury.

Respectfully submitted,

SAUCONY, INC.

By its attorneys,

_____
Jaren D. Wilcoxson (BBO #637865)
Nicholas K. Mitrokostas (BBO #657974)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

December 16, 2005

LIBA/1654157.2